No. 30        August 30, 2013        223

IN THE OREGON TAX COURT
REGULAR DIVISION

WINCO FOODS, LLC,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
and Marion County Assessor,
*Defendants.*
(TC 5013)

Plaintiff (taxpayer) appealed to the Magistrate Division from a decision of the Marion County Board of Property Tax Appeals (BOPTA). The appeal was later specially designated to the Regular Division. Taxpayer argued that Defendant Department of Revenue (the department) and Marion County Assessor (the county) had improperly valued its warehouse facility, requesting an adjustment of the property's real market value. Following trial and post-trial briefing, the court found that the parties' significant differences in different valuation approaches led the court to reach conclusions as to calculational principles and to direct the parties to apply the conclusions in reaching a value upon which they either could agree upon or the differences as to which would be presented to the court for final decision.

Trial was held in the courtroom of the Oregon Tax Court, Salem, from June 27 through 29, 2012.

John F. Neupert, Miller Nash LLP, Portland, argued the cause for Plaintiff (taxpayer).

Joseph A. Laronge, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department).

Decision rendered August 30, 2013.

**HENRY C. BREITHAUPT, Judge.**

## I.  INTRODUCTION

This property tax valuation case is before the court after a trial and post-trial briefing by the parties. The year at issue is the tax year 2009-10.

## II.  FACTS

The subject property is an approximately 1 million square foot grocery distribution warehouse and related

facilities and land located in Woodburn, Oregon, just west of the Interstate 5 freeway on an irregularly shaped land area of approximately 80 acres. The property improvements are one large steel construction building with extensive cold storage and frozen storage capacity, an office facility and a large dry storage area. This building has 40-foot ceiling heights. In addition, there are buildings for produce return, truck washing, vehicle repair and fueling. The improvements were originally constructed in 1997. Remodeling and expansion occurred in 1999, 2002, and 2008.

## III.  ISSUE

The issue in this case is the real market value of the subject property as of the assessment date of January 1, 2009.

## IV.  ANALYSIS

Plaintiff (taxpayer) and Defendant Department of Revenue (department) appear to have many things in common in their approaches to valuation and several significant differences. Neither property uses an indicator of value based on capitalized income from the property. The calculational approaches of the parties on other indicators differ in important respects. Therefore, the court will reach conclusions as to calculational principles and direct the parties to apply the conclusions in reaching a calculation of value upon which they either can agree or the differences as to which will be presented to the court for final decision.

A.  *Use of Sales Indicator*

Taxpayer's valuation expert, Robert Greene, developed a comparable sales indicator of value for the subject. Admitting that there were not comparable sales of large refrigerated distribution warehouses, Greene reached a conclusion as to the sales prices of arguably comparable dry storage facilities. The expert then added to that value an amount equal to the depreciated cost of machinery and equipment found at the subject property, as determined by the second expert, Richard Kaufman, who testified for taxpayer. The expert for the department, Bronson Rueda, concluded that there were no sales sufficiently comparable in time and character to permit development of a sales indicator of value.

The court is of the view that the development of the sales indicator by Greene has problems associated with it that make his conclusions not persuasive. The first of the deficiencies is in the size of facility that was involved in Greene's sample of sales. They were all significantly smaller than the square footage of the very large-sized subject facility. Of equal importance is that the properties Greene viewed as comparable had 32-foot ceilings whereas the subject property has 40-foot ceilings.

Secondly, Greene took the sales data and adjusted it for market changes. However, in doing so, Greene relied on information and data about the general industrial market, even though he concluded that the highest and best use of the subject was as a mega-distribution facility with cold storage and refrigeration. The court is not willing to accept that the market for the specialized type of property that the subject property represents is the same as the market for properties, even industrial properties, generally.

To the indicated value for dry storage space, Greene added the depreciated cost indication developed by Kaufman for the machinery and equipment found at the subject property. This approach assumes that one can simply add machinery and equipment to a general storage space. The record has little if any evidence that this can be done without significant cost. Greene admitted that his calculations did not have any adjustment for the extra capital cost that would be needed to add machinery and equipment to properties he thought were comparable as to dry storage space.

The court concludes that the sales indicator developed by Greene is not reliable.

B. *Cost Indicator*

Both parties developed cost indications of value. The major differences in approach as to this indicator were with respect to calculation of physical depreciation and whether an allowance should or should not be made for external obsolescence.[1]

---

[1] The parties do not appear to be significantly separated as to the calculation of replacement cost new or cost of land. The court directs the parties to confer regarding any differences they believe they have on these items in light of the matters decided in this opinion.

C.  *Physical Depreciation*

Rueda, the expert for the department, relied exclusively on an external information service, Marshall Valuation Services, for a determination of the economic life of the structures at issue. Greene testified that unquestioning reliance on that service is not adequate, a fact recognized by the publishers of the service itself. Greene's discussion of the adjustments needed included those needed to take into account the actual facts for the buildings at issue, its construction materials and other factors.

Greene also was more careful not to include in the cost of the structure the costs of machinery and equipment attached to the structure. This avoided an error contained in the conclusions of Rueda, who did include some machinery in the figures to which the longer lives for the structures, as compared with machinery and equipment, were applied.

The court concludes that the physical depreciation methodology used by Greene is the correct one and the adjustment for physical depreciation should be calculated using that methodology.

D.  *External Obsolescence*

Taxpayer asserts that there is substantial external, or economic, obsolescence associated with the subject property. Taxpayer argues that decline in general economic conditions that had occurred prior to the assessment date justify a reduction in the cost indicator for economic obsolescence. On this question, as with all questions in this appeal, taxpayer has the burden of proof. ORS 305.427. The court concludes that taxpayer has failed to carry that burden as to this question.

As has already been mentioned, the subject property is a property with a particular highest and best use, that of a large-scale grocery distribution with cold storage and refrigerated storage capacity. Notwithstanding that highest and best use, Greene relied on information and discussions with persons regarding the economy and industrial properties generally. Economic obsolescence may occur as to a specific property type, but the court does not accept that it can be established by reference to general information about much broader classes of property. Taxpayer has not supplied

the court with any authoritative source that supports the approach taken by Greene. Further, a text that all parties accept as authoritative, *The Appraisal of Real Estate*, indicates that consideration of facts applicable, or not, to particular property types is necessary to determine whether economic obsolescence has occurred in the particular segment of the overall market or segment of the economy in which the subject property is found. Appraisal Institute, *The Appraisal of Real Estate* 442-43 (13th ed 2008).[2]

Greene did not look at the economic facts in the general market for food products, groceries or facilities that serve those areas of the market. Therefore, Greene's supporting material simply does not satisfy the burden of showing that, more probably than not, the subject property would suffer from external or economic obsolescence. Although many segments of the economy, and the properties found in or serving those segments, experienced significant adverse effects at or about the time of the assessment date for this case, the court cannot conclude that this, or any other particular property, was subject to economic obsolescence without a much more focused study.

In both pre-trial proceedings and at trial the quality of the material relied upon by Rueda was a subject of dispute between the parties. Even if Rueda's study of the relevant markets and economic conditions in them were to be totally ignored, taxpayer has not borne its burden of proof. However, the evidence which Rueda did develop does not, in fact, deserve to be ignored. Even taking into account that some of the evidence relied upon was severely weakened by the need to redact confidential information, Rueda presented relevant and unrebutted information about the grocery and food products segments of the economy that support a conclusion that the subject property did not suffer from economic obsolescence to the extent asserted by Greene, or even at all.

---

[2] An article from *The Appraisal Journal* offered as an exhibit by the department also makes clear that economic obsolescence, if it exists, can only be determined by a much more detailed analysis of the property in question and the particular segment of the economy that the property serves or occupies. *See* Donald J. Harman and Michael B. Shapiro*, Depreciation: Incurable Functional Obsolescence and Sequence of Deductions*, *The Appraisal Journal* 408 (Jul 1983).

E.   *Final Determination of Value*

The court cannot determine if there are significant differences between the parties as to replacement cost new, primarily because of the different property included in the structure by Rueda, but also because of what may or may not be any substantial difference as to the cost of construction new. However, the department accepts Kaufman's determination of value for machinery and equipment. That being the case, the parties are directed to confer regarding the necessary adjustment to replacement cost new and land value, if any. Physical depreciation to be deducted is to be determined as computed by Greene. The parties agree to a deduction for functional obsolescence. No deduction for external obsolescence is to be taken. If the parties can agree on a final value, the court will enter a judgment in accordance with the agreement. If one or more elements remain at issue, the court will hold a brief hearing to resolve those.

## V.   CONCLUSION

Now, therefore,

IT IS THE DECISION OF THIS COURT that the parties are directed to confer as to the determination of a final value using the calculational principles as described above to apply the conclusions in reaching a calculation of value upon which they either can agree or the differences as to which will be presented to the court for final decision.